### Springfield Fire & Marine Insurance Company v. Snowden.

(Decided February 2, 1917.)

#### Appeal from Jessamine Circuit Court.

1. Insurance—When Contract for Complete.—A contract of insurance is fully made when the application is accepted, where there is no agreement to the contrary. Such a contract may be made by parol.

2. Insurance—Contract for Insurance.—When it is contemplated by the parties to an insurance contract, that a policy is to be issued, then the negotiations are merged in the policy when it is prepared and delivered.

3. Insurance—Representation—Risk.—When representations are not asked of the applicant for insurance, and he makes none, and the insurer with this general knowledge chooses to assume the risk, he must be deemed to do so at his peril.

4. Insurance—Section 639, Kentucky Statutes.—Section 639, Kentucky Statutes, does not apply when no inquiries are made of an applicant for insurance, and he does not voluntarily make any representations.

5. Insurance—Avoidance of Policy—False Statements.—In an application for insurance, if the applicant voluntarily or in answer to inquiries makes statements, which are material to the risk and false, they will avoid the policy, although the applicant does not know that they are untrue and has no fraudulent intent to mislead or deceive.

6. Insurance—Stipulations.—In an application for insurance, where no inquiry is made nor answer given nor any voluntary statement made with reference to an encumbrance upon the subject of the insurance, and the policy contains a stipulation, that if there is any other insurance upon the property at the time, that the policy is void, it will not be unenforcible because of such stipulation, unless the encumbrance is material to the risk and the applicant fraudulently failed to disclose the fact of the encumbrance.

GORDON & LAURENT, JOHN H. WELSH and F. M. DRAKE for appellant.

N. L. BRONAUGH and BRONAUGH & BRONAUGH for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellee, S. N. Snowden, is a farmer and resides about four miles from Nicholasville, and previous to the 6th day of March, 1915, had carried insurance against fire, upon his property, in the Boston Insurance Company and the Henry Clay Fire Insurance company. The first named company ceased to do business, in the community in which appellee lived, but, he then had a policy of insurance upon his property in the latter company, which insured his dwelling house against fire in the sum of fifteen hundred dollars, and his household and kitchen furniture against fire, in the sum of five hundred dollars. He desired insurance to take the place of that which he had lost, when the Boston Insurance Company withdrew and ceased to do business in the community. He went to the office of an agent of appellant, who was a bank cashier in Nicholasville, and stated to him that a company, which had been insuring his property against loss or damage from fire had ceased to do business in the territory and that he wanted to secure some insurance in place of that which he had carried in the retiring company, and wanted to negotiate with the agent, looking to the making of a contract with the company, which he represented, to insure his property against fire. The agent signified his readiness to negotiate with him and when the rates were mentioned, the appellee said that he desired to confer with the agent

of another company in the town, with reference to the rates, and the agent said to him, that he would find all the rates to be the same. The appellee, however, went out of the office for a little while, and when he returned he announced to the agent that he would contract with him. The agent then inquired of him upon what property he desired the insurance and about what amount represented three-fourths the value of the property, and the appellee gave the information desired. The agent then said to appellee, that he would write the policy and that it would be there in the bank for him: "Well, the policy will be issued and in force from to-day." The appellee paid the premium and went away. The agent, having some other matter in hand, did not at once prepare the policy, but during that day prepared the policy and put it in the vault of the bank for appellee. The insurance, agreed upon and for which the policy was made out, was twenty-five hundred dollars upon appellee's dwelling; four hundred and fifty dollars upon his household and kitchen furniture, and other personal property in the dwelling; one hundred and fifty dollars upon a smoke house; and fifty dollars upon a buggy house. The foregoing seems to have been the entire contract as agreed upon by the agent and appellee. The agent did not make any inquiries as to the title to the property, the encumbrances thereon, or whether there was then any other insurance upon the property, and the insured made no representations in regard to it, in one way or the other, except as to what, in his opinion, amounted to three-fourths of the value of it. He made no concealments of any kind in regard to it. The agent testifies, but does not state whether or not, he had any knowledge of the fact, that there was other insurance upon the property at the time, but the inference from what he says is to the effect, that he did not have such knowledge. The policy remained in the bank for thirty-eight days, or until after the property was destroyed by fire, when it was given to appellee and he was, also, informed that the appellant would not pay the loss or any part of it, because of the existence of the following clause in the printed portion of the policy, and upon the second page of it:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be

void, if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on the property covered in whole or in part by this policy.''

The insured instituted an action upon the policy to recover of appellant its ratable portion of the damages, and, in defense of the action, the appellant relied upon the foregoing stipulation as avoiding any recovery. The appellee contended that the stipulation was not a part of the contract, which he had entered into with the appellant for the insurance, and asked that the policy be reformed so as to conform to the contract, which he had made, and for a recovery against appellant for its ratable portion of the damages. The action was tried by the court, without the intervention of a jury, and a judgment was rendered, by which the stipulation in question was eliminated from the policy, and a recovery adjudged in favor of appellee, and from the judgment the appellant has appealed.

That prior insurance was carried upon the property by the Henry Clay Fire Insurance Company, and that it was in effect, at the time appellant made the contract of insurance sued on, and that appellee did not inform the appellant's agent of that fact, is admitted. That the application for the insurance was by parol, and that appellant's agent made no inquiries of appellee with reference to any existing insurance upon the property, and that he did not make any statements in reference thereto is, also, admitted. It is not contended that the agent had any knowledge of the existence of the prior insurance. It does not appear that appellee knew that such a fact was one material to the risk, and it is not contended that he fraudulently made any concealment of any kind. It is proven, conclusively, that appellee had no knowledge of the fact, that such stipulation was in the policy, until after his property was burned. It is, also, admitted that so far as the negotiations between the agent and appellee went, that the stipulation was not agreed upon as a part of the contract. It is, also, admitted that the agent did not inform appellee that any such stipulation was to be in the policy, and he never saw the policy until after the loss. The amount of the recovery, if appellant is at all liable, is not complained of, and hence, the only thing to be determined is, whether the policy is void and unenforceable because

of the stipulation in it with reference to the prior insurance, and that it was not agreed in writing that appellee might have insurance upon the property, other than that provided for in the policy sued on.

In cases of Manhattan Insr. Co. v. Stein, etc., 68 Ky. 652, and Baer v. Phoenix Insr. Co., 4 Bush 242; Stevenson v. Phoenix Insr. Co., 83 Ky. 7, and other cases in line with them, are relied upon as holding that such a stipulation in a policy of fire insurance is valid and enforceble, and that a breach of the condition renders a contract of insurance unenforceable. A reference to these cases develops the fact, that it was not a matter of controversy in them as to whether the stipulation was a part of the contract, and no such state of facts was presented in either of them as is presented in this case. It was admitted in those cases, so far as the opinions indicate, that the stipulation against any other insurance was a part of the contract.

In the instant case, the contract was orally made, but in contemplation, however, that it was to be reduced to writing, and when so reduced, it, doubtless, should be held that the negotiations were merged in the written instrument.

It is elementary to say, that in order to make a contract there must be an agreement. In fact, there can not be a contract, unless all parties to the negotiations mutually assent. There must be an intention common to both, or all, who are bound. This intention must be made known by the words used by them when the assent is given. The intention must be communicated, and what is communicated and assented to is the contract. In other words, there must be a meeting of the minds of the parties in agreement. The things the minds agree upon is the contract. In the instant case, the things about which the minds of the parties met, and the things agreed upon, were that the appellant agreed to insure the dwelling of appellee, in consideration of twenty-eight dollars then and there paid to it by appellee, in the sum of twenty-five hundred dollars, the contents of the dwelling in the sum of four hundred and fifty dollars; his smoke house in the sum of one hundred and fifty dollars; and his buggy house in the sum of fifty dollars, against loss and damage by fire, at any time between the 6th day of March, 1915, and the 6th day of March, 1916. There is no pretense, that it was ever con-

sidered, much less agreed upon, that, if there was then any other insurance upon the property, or if appellee should thereafter contract for insurance upon it, appellant was released from its obligation to him, unless he first obtained the agreement of appellant, that he might hold what insurance he then had upon the property or contract for other insurance. It seems, indeed, that the parties contemplated that their contract for the insurance should be put in writing into a policy, as a memorial of the contract, but it could not be logically held, that they agreed that any conditions should be embraced in the writing, other than those agreed upon, when the proof is in nowise conflicting as to the agreement; nor can it be presumed, that appellee contemplated that the policy, when prepared by appellant, would contain anything other than the terms of the contract agreed upon. If the policy had been delivered to and accepted by him, with knowledge of the stipulation in it, or if he had had the policy, under such circumstances, as he ought to have known of its contents and failed to repudiate it, then a very different case would be presented. To hold that appellant, who knew what was in the policy, could insert into the written memorial of the contract a stipulation of which appellee did not know and to which he had not agreed and which, under the facts, would render it void as soon as it was issued, and then allowing appellee to rest in fancied security, relying upon his contract as a protection against disaster, until after he suffers the loss against which he was guarding, and then to rudely break his dream of security by the interposition of the stipulation, would be similar in its effects to lulling one into a belief in his perfect safety and then assailing him from ambush. Placing the policy in the bank to be held for appellee was, indeed, a technical delivery. However, in the case of Franklin Fire Insr. Co. v. Hewitt, Allison, etc., 3 B. M. 231, Hewitt, Allison, etc. sought a rectification of a fire insurance policy, which the insurance company had issued to them, so as to make it conform to the contract which they had made with the company for the insurance and a recovery upon it in accordance with its conditions when rectified. The receipt for the premium, in part, and the parol testimony proved, that it was agreed that the insurance policy should cover loss by fire of goods, which the insured held on consign-

ment as commission merchants, although the receipt for
the premium provided that the policy was to be "on the
terms and conditions of the policies issued by the Frank-
lin Fire Insurance Company of Philadelphia." When
the policy was issued, one of the conditions in it was,
that goods held in trust or on commission were to be
insured as such, otherwise the policy would not cover
such goods. The policy, according to its terms, covered
only such goods as were the property of the insured.
A loss having occurred of goods held on commission,
the suit was instituted to recover for the loss, and to re-
form the contract so as to cover such goods in accord-
ance, as it was claimed, with the contract for the insur-
ance. The policy had been delivered to a clerk of the
insured four or five months before the loss, but it was
proven that it had not been seen or examined by the in-
sured until after the loss, when it was for the first time
learned by them that it did not conform to their con-
tract for the insurance. This court held, that in as
much as the insured had never seen the policy until
after the loss, there was no such acceptance of it,
as would prove, that they had waived the original con-
tract, or taken the policy as a consummation of it.
While holding that the carelessness of the insured was
great, in not having examined the policy, that it was not
sufficient to forfeit their rights under the contract, as
they had the receipt for the premium, which evidenced
the contract for the insurance, "and as they had no
reason to anticipate a variance from it in any policy,
which had been or might be furnished, and it is, more-
over, by no means certain, nor even very probable, that
had they inspected the policy they would have at once
detected the variance, or become aware of its import-
ance, until they had demanded payment of it." The
relief sought in the action was granted. To avoid the
force of the contention, that the stipulation relied upon
by appellant, in the instant case, was not a part of the
contract between it and appellee for the policy of in-
surance, it is insisted, that, where nothing is said in the
application and contract upon which the policy is issued
as to the terms of the policy, the law will conclusively
presume that the parties contemplated the usual form
of policy, and that the usual form of policy embraces
such a stipulation, as is here relied upon. It is, also,
insisted that the policy in question, is the form which

the Insurance Rating Board requires to be issued upon all farm property, and for that reason the appellee was obliged to have contracted for the policy with the understanding that it should embrace the stipulation. With reference to the latter contention, it appears from the testimony of the agent, that the yellow sheet, which is pasted onto the policy, is what is required by the insurance board. The yellow sheet does not contain the stipulation insisted upon as a part of the contract. It is embraced in the one hundred and twenty lines of fine type, upon the second page of the policy. If such a condition was required in every policy of fire insurance by a statute or by a regulation of some governmental authority having power to prescribe and require the regulation, then it would be presumed, that the insured, when contracting for insurance, had done so with knowledge that such condition would be in the policy without anything said in reference to it, but the argument loses its force in the absence of any statute or governmental regulation requiring the stipulation to be a part of every contract of insurance.

As to the contention, that the law will presume, in the absence of any express agreement to the contrary, that the policy is to be in the usual form, it can not be said as a matter of law to what extent it is usual or unusual, for contracts of insurance merged into policies, to contain the stipulation relied upon as a part of the contract. The evidence is not directed to the proof of the fact, that policies usually contain the stipulation or to what extent they do so. It might be said as a matter of common knowledge, that many policies contain the stipulation and many do not, and that in some there is incorporated a condition, which requires the taking out of additional insurance upon the subject of the policy. Cases are cited from several jurisdictions, which seem to uphold the contention of appellant, and some of them go to the extent of holding, that where a contract of insurance does not contain nor mention such a stipulation, and where a policy of insurance was not even issued, the insured was bound by such stipulation, although not in the contract, and if he had any other insurance upon the property at the time or thereafter obtained any other, and although entirely free from any fraudulent concealment or purpose, he must forfeit his contract in the event of a loss. Without entering into

a discussion of the soundness of such a principle, under the circumstances of the cases cited, suffice it to say, that the doctrine has never prevailed in this jurisdiction, and there does not appear any good reason to now adopt it.

In Clark, etc. v. Mfrs. Insr. Co., 8 Howard 255, it was said:

"But the relation of parties seems entirely changed, if the insurer seeks no information and the insured makes no representations. The governing test on it must be this—it must be presumed, that the insurer has in person or by agent, in such a case, obtained all the information desired as to the premises insured, or ventures to take the risk without it, and that the insurer being asked nothing, has a right to presume that nothing on the risk is desired from him. . . . . But when representations are not asked nor given and with only this general knowledge, the insurer chooses to assume the risk, he must in point of law be deemed to do it at his peril." In line with Clark, etc. v. Manufacturers Ins. Co., supra, are Strong v. Manufacturers Ins. Co., 20 Am. Dec. 507; Hartford Protective Ins. Co. v. Harmer, 59 Am. Dec. 684; Arthur v. Palatine Ins. Co., 57 Pac. 62.

This conclusion seems to have been somewhat similar to the view taken by this court in Hartford Insurance Co. v. Haas, 87 Ky. 529, when it said:

"We are not disposed to adjudge that such contract, shingled over with stipulations that are practically deceptive, . . . . are binding on the ignorant and illiterate, when guilty of no fraud or misrepresentation, but have trusted, alone, to the superior knowledge of the agent, who undertakes to make such an application or to issue such a policy as will meet the requirements of the company he represents. The statements embodied in the policy issued under such circumstances, if false or erroneous, should be regarded as the act of the insurer."

It is apparent that section 639, Ky. Statutes, which provides, that "all statements or descriptions in any application for a policy of insurance shall be deemed and held representations and not warranties, nor shall any misrepresentation, unless material or fraudulent, prevent a recovery on the policy," has no application to the facts of the instant case, although it was held in

Hartford Fire Insurance Co. v. McClain, 85 S. W. 699, that this section of the statutes applied to policies as well as to applications for them, and that stipulations in the policy, itself, as to title or interest, although not signed by the insured, amounted to representations by the applicant of such facts, when he has received and accepted the policy. But, as was said in Franklin Insurance Co. v. Hewitt, Allison, etc., *supra,* there was no such acceptance of it in the instant case as would prove that appellee had waived the right to have a policy, in accordance with his contract or had taken the policy as a consummation of it. It has been consistently held, that where, in an application for insurance, the applicant voluntarily or in answer to inquiries makes statements and the fact about which he makes the statements is a material one to the risk, and the statement is untrue, the policy may be avoided, although the applicant did not know that his statements were untrue and had no fraudulent intent to mislead or deceive. In the instant case, however, there were no statements made, either voluntarily or in answer to inquiries, of which there is any complaint, and although under such a state of facts, a concealment can rarely be complained of, the appellant complains that appellee did not voluntarily without inquiry being made and without knowledge that it was desired, divulge to it the fact, that there was already other insurance upon the property. Treating a stipulation in a fire insurance policy, to the effect that the policy was void, if at the time it was issued there was an encumbrance upon the property, as a representation of the insured, this court has held that in such a state of facts, if no inquiry is made nor answer given concerning an encumbrance and no voluntary statement made by the applicant touching the encumbrance, the policy will not be declared void or unenforceble, unless the fact of the encumbrance is material to the risk and the applicant fraudulently failed to disclose the fact of the encumbrance. Niagara Fire Insr. Co. v. Layne, 162 Ky. 665; Niagara Fire Insr. Co. v. Layne, 170 Ky. 339; Firemen's Fund Insr. Co. v. Meschendorf, 14 R. 757; Lancaster Insr. Co. v. Monroe, 101 Ky. 121; Sun Mutual Insr. Co. v. Crist, 39 S. W. 837; Phoenix Insr. Co. v. Phillips, 16 R. 122; Continental Insr. Co. v. Ford, 140 Ky. 406.

In Vankirk v. Citizens Insr. Co. of Pittsburg, 48 N. W. 798, the Supreme Court of Wisconsin held, that where the insured was not questioned as to encumbrances upon his property, and did not fraudulently conceal the fact, the existence of a mortgage upon the property would not invalidate the policy, although there was a stipulation in the policy to the effect, that such an encumbrance would render it void. This same view was taken by many other courts, as in Dooley v. Ohio Insr. Co., 52 Mich. 132; Alkan v. New Hampshire Insr. Co., 10 N. W. 91; Insr. Co. of North America v. Bachler, 44 Nebr. 549; Guest v. New Hampshire Fire Insr. Co., 33 N. W. 31; Washington Mills v. Weymouth, etc., 135 Mass. 503; Trade Insr. Co. v. Barracliffe, 45 N. J. Law 543; Tiefenthal v. Insr. Co., 53 Mich. 306; Humble v. German Alliance Co., 85 Kan. 140; 116 Pac. 472. The same is the teaching of the text writers. Wood on Insurance, vol. 1, second ed. 517; May on Insurance, vol. 1, section 166. The same rule, it seems, should apply when the stipulation regards existing insurance, as when it regards an existing encumbrance. However, with the view we have taken of this case, that the stipulation was not a part of the contract, and that there was no fraudulent concealment of anything to obtain the contract, and that there was no such acceptance of the policy by insured, as written, as forfeited his right to rely upon his original contract for a policy consistent with such contract, the appellant can not interpose the stipulation to avoid the policy.

(2) There is no reason why the written evidence of an insurance contract may not be rectified so as to make it conform to the real agreement, as may the written memorial of any other contract. Such a contract is not within the statute of frauds, and may exist and be enforceble without the issual of a policy and in the instant case was fully completed and in force before the policy was issued. Wood on Insurance, sec. 20; Phoenix v. Spiers, etc., 87 Ky. 285; Franklin Marine & Fire Insr. Co. v. Drake, 2 B. M. 47; Franklin Fire Ins. Co. v. Hewitt, etc., 3 B. M. 231. There is no disagreement in the evidence as to what the contract, in the instant case was, and it is perfectly certain that the stipulation relating to existing insurance was not embraced in the contract. Truly, the evidence to warrant the reformation of a policy must be clear and convincing.

As before stated, there is not any disagreement as to the facts of the case, in any regard.  The agent's statement of the terms of the contract does not embrace the stipulation.  He does not give any explanation of the reason for its being embraced in the policy.  As any other instrument, which, by reason of inadvertence, accident or mistake, fails to truly set forth the terms of the contract, it may be reformed so as to contain the real agreement, if the mistake is mutual or there be mistake upon one side and fraud upon the other.  14 R. C. L. 902.

The evidence was sufficient to sustain the finding of the court as to the facts, and the principles of law applied seem to be correct.

The judgment is, therefore, affirmed.